This morning is 12-1689 IN RE BEKA SOLOMON, Mr. Brody, whenever you're ready. Good morning, Your Honor. First, I want to talk about the reissue issue, reissue error issue, and I'm going to start out by repeating that it's well-established that the reissue statute is remedial in nature and based on fundamental principles of equity and fairness and therefore should be construed liberally. I understand that this does not give one carte blanche to correct any kind of error that can't be used as a panacea to fix everything or to consider prosecution de novo. And so certain exceptions have developed to this liberal construction of the reissue statute. And what all of these exceptions have in common is that a conscious decision has been made. In the recapture area, a conscious decision was made to cancel a claim, try to get it back to reissue. No, you can't. You made your conscious decision. You don't get a mulligan on that. Case about filing date that they chose to... How do you get around the fact that Solomon acquiesced to the request to prosecute all treatment claims individual application? All Solomon acquiesced to was Claim 24. Claim 24 cannot be prosecuted in a reissue because it had been presented below and had been a conscious decision to delete it and a conscious decision not to file a divisional on that particular claim. The mistake here was in not filing claims of a different scope, substantially different claims, even though directed to the same invention, not having filed those claims originally in the parent case. You rely on Doyle, but the claim that you're now seeking on reissue is actually narrower than the non-elected claim, correct? That's correct. But Doyle only referred to an exception for claims that were broader than the non-elected claims. Isn't that right? That's correct. I'm not saying that I have the same fact situation as Doyle. I was relying on Doyle's interpretation of ORETA that ORETA only applies to claims that are substantially identical. And what's the purpose of that? It makes perfect sense in ORETA that there was no mistake in not presenting that claim that ORETA was trying to present in reissue. There was no mistake. They presented the claim. They presented it, and then they made a decision to cancel it or to tell the examiner it's okay to cancel it when she was allowing the other claims. Then they made a mistake. The only mistake was they forgot to file a divisional. But if it's narrower, then how wouldn't it have been covered by the broader claim that was non-elected? Whether it's covered by, whether it's directed to the same class of invention or not is not the issue under ORETA. ORETA says it's substantially the same claim. My narrower claim may well have been patentable. On the recapture side, in In Re Wadlinger, for example, 496 F. 2nd, 1200, CCPA 1974, a claim was canceled. They couldn't get that claim back by reissue. So they submitted a narrower claim, and that was considered on reissue. They could consider that on reissue, even though they had consciously canceled the broad claim. Well, that's because they're drawn to the same invention in that case. The whole question here is, are these distinct and different inventions? The examiner put in a restriction requirement, didn't he? There's Group 1, Group 2, and Group 3 claims, right? Yes. And the examiner said, you can't prosecute two distinctly different inventions in the same application, didn't he? Isn't that what the meaning of a restriction requirement? My error was not in presenting these claims after the restriction requirement. My error was not originally presenting these claims. If there had been these claims presented originally, there would have been a different kind of restriction requirement. I would have made a conscious decision whether or not to have them examined, whether or not to file a division, and those specific claims couldn't be presented in reissue. Why isn't the PTO correct to the extent that they argue that in reissue, you can't ask in reissue for claims that you could never have filed in the first application? Why couldn't I have filed it in the original application upon filing? Because they were directed to a distinctly different invention than the invention that you elected to pursue. But before the restriction requirement, I could present any claims I wanted. So what you're saying is, had you presented this claim, you might have made a different election? I may have made a different election or I may have made a conscious decision not to prosecute them and I wouldn't be here because ORETA would specifically apply to claims that are identical to those that had been prosecuted and then canceled consciously, and then a decision made not to file a division. My mistake is not in not filing a division. My mistake isn't in not submitting them after the restriction requirement. My mistake was not submitting them at all. It sounds to me like what you're saying is that had you submitted this and still made your same election, it wouldn't have mattered. It would still be gone, right? If I had submitted them and realized the importance of these claims and submitted them originally, I don't know that I would have made the same election. But if I had made the same election, I couldn't bring them up and reissue because it's the exact same claims. And that's what ORETA says. You can't do exact same claims. So you're saying you could get a total do-over on your election, on your decision about a divisional, everything, because you can now assert a narrower claim. These claims had never been presented. The ORETA claim had been presented. These claims had never been presented. If I had presented them originally, then this is not a do-over of the original prosecution. It's a matter of then those claims would have to have been examined. And the examiner would, if the examiner made a restriction, held them to be a fourth invention or part of the third invention or whatever the examiner did, then we would make a conscious decision. The only exception to the remedial nature, fairness and equity, please, the only exception to that is conscious decisions. And the conscious decision to elect, to non-elect Claim 24, let's say, doesn't inform whether there was a conscious decision on claims that have substantially different scope and context. Section 251, which I'm reading right now, says the kind of error that can be used or to which the issue can apply is by reason of the patentee claiming more or less than he had a right to claim. And I think of that as narrowing or broadening three issues, right, more or less. What you want to do is substitute an entirely distinctly different invention for the invention you did claim. That's not claiming more or less for the same invention. It's claiming an entirely different invention. So I don't know that the language of the statute supports the type of error that you want to say you made here by failing to elect claims for a distinctly different invention that you hadn't thought of at the time. I think that there are many situations and many cases where it's held that submitting the claims to a different invention is broadening the patent. You're broadening the patent because now you're claiming something that wasn't claimed in the patent. The error was that through error the patent was not fully invalid. It was defective because it claimed more or less than it had a right to claim. It claimed less than it had a right to claim because it only claimed these processes at screening and it didn't claim the particular method of treating, method of disaggregating beta amyloid. But you chose to claim originally the molecule, method of selecting the molecule, not a method of treating people, right? That's what you chose to claim originally. No, I claimed 24 claims. I claimed three different inventions originally. What do you mean? The claims that issued in this patent after the restriction requirement were to only the molecule claims, not method of treatment claims, correct? That's correct. So now we have to look at are you broadening these claims? Are you broadening claims to selecting a molecule? And it seems to me that you're choosing a totally different invention and not broadening the invention that was the subject of this issued patent, which is the only thing you're allowed to do in reissue. See, I'm not sure that it says broadening or narrowing the claims. It says broadening or narrowing the patent. Well, it says the patent you're claiming more or less than he had a right to claim. Exactly. And I had a right to claim something that's a completely different invention. In fact, let me point out to you. You're talking about broadening or narrowing the application, but under the law, the question is broadening or narrowing the patent. And when the patent issued, it was premised on your election. When the patent issued, it was the claims that were issued in the patent were claims that were elected. That's not to say that I can't prosecute in a reissue an error, okay, that caused the patent to claim less than I had a right to claim. If I had presented those, if I had realized the importance of those claims when the case was filed, they would have been presented and they would have been examined. They would have never been examined. I could have elected them. If I had elected them, they would have been prosecuted. This isn't a do-over. These are new claims like any other reissue. And may I point out that 37 CFR 1.176 is a regulation of the patent office that says that if you have claims in your reissue that are drawn to a different invention from the claims in the patent, the examiner should require restriction, require you to file a divisional in that reissue. This is well contemplated by the patent office. If you can file claims in a reissue that are to a different invention from those that issued in the patent. I'll look at the regulation. I'm not familiar with it. Sorry, I'll take your word for it and I'll take a look at it. It's rebuttal time. I don't want to take advantage of this rebuttal. So, why though is the new claim not the same as the Group 3 claim that you've elected not to pursue previously? Because it's narrower? It's narrower. It's drawn to a different invention because it has to do with inhibiting aggregation. Whereas Claim 24 is reversing aggregation. There's many changes in the language. It's not substantially the same. But perhaps most significantly, it's narrower. I think it's drawn to a different invention as well. But either way, whether it's narrower and it's substantially narrower. Because there were 13 different examples of aggregating proteins that we had claims to when we first filed the reissue. And they were restricted that every one of those is patently distinct from one another. And we elected only the beta amyloid and continued prosecution only on the beta amyloid. Which is a very restricted, narrower claim than the one that was in Claim 24. And it's drawn to inhibition of aggregation rather than reversal of aggregation. Which is really a different invention. Why don't we hear from the government? Do you want to hear about any other issue or should we do that later? Well, it's up to you. But no, if you have another issue that you need to raise now. We have the 112 issue that we need to talk about. Right, yeah. This is an issue of... The claims are directed to the use of a specified genus of antibodies. And the issue is whether we're in possession of that genus of antibodies that's used in the process. So how are those antibodies defined? They're defined as antibodies that bind beta amyloid. They're obtainable using an immunogen consisting of the first 28 amino acids of beta amyloid. I'll just point out that you are in your rebuttal time. So you might want to try to really... I mean, you can raise this issue, but it's in your interest, I think, to really condense it. We have your briefs, obviously. Ms. Seward? May it please the Court. This Court's case law is clear. A patentee cannot use a reissue proceeding to obtain a claim in reissue that she could not have prosecuted in her original application due to a restriction requirement in which she has acquiesced. Here, the examiner confronted Solomon with a restriction requirement. She acquiesced to it. She chose one invention to prosecute, and that was a method for selecting an antibody in vitro. In so doing, in acquiescing to that restriction requirement, she made a conscious decision. But OREDA does, as the opposing counsel pointed out, say that they've only acquiesced for claims that are substantially identical to the originally non-elected claims. Right. OREDA doesn't define what it means by substantially identical, and we can see that they're not at the same scope. Substantial identicality is a term that appears in many different forms in patent law in everything from contempt proceedings to... but substantial identicality in contempt proceedings, for example, that's the exact language used to determine that a contempt could be brought, it's hard for me to conclude that these claims are substantially identical, at least under my understanding of that standard as it is used in contempt proceedings. So what is it you think we ought to interpret substantial identicality as? We think that it means that the proper procedure, the proper analysis, is to look at the originally non-elected subject matter and determine if the reissued claim would fall within the same group of that non-elected subject matter and would have been restricted away with the non-elected group. And here, even though the reissued claim is narrower, there's no distinction between... patentable distinction between the reissued claim and the broader non-elected claim. They're both method of treatment claims, they have the same method step, which is... Let me ask a dumb question. I'm not familiar with the regulation that Mr. Brody referred to. Is it true that in the context of reissue, you could file claims, the PTO, broader claims, within two years, of course, if the PTO suggests, well, these are two distinctly different inventions, you have to divide those off and then two different reissues will issue? There is, and that is the stat situation. The difference between the stat situation and the 1.176 stat situation is that in those original applications, no restriction was made. Okay, wait. So the PTO does contemplate and allow people in reissue to file claims directed to distinctly different inventions, which broadening has not, at least by the PTO thus far, been interpreted as must be with just a broadening of the same invention as opposed to any invention that the patent disclosure would allow the patent seat to claim. Yes, the Patent Office does allow that as long as in the original application there wasn't a restriction requirement, and that is the holding of in-rate stats. And that's the distinction between stats and wireless. Exactly. That's the distinction between stats and wireless. In stats, there was no election. There was no acquiescence to the restriction requirement. And here the thread that underlies all these cases, the Rider-Weiler-Doyle case law, is that when there is a restriction requirement, you've agreed that all other subject matter that's distinct from the invention that you chose has to go into... No, not all other subject matter that's distinct from the invention you chose, but only the other classes of claims that you presented. That's all they've agreed to. How in the world is a restriction requirement dividing between two claims in agreement that they will never pursue claims of any other nature? Because that is the holding of Weiler. And even if you agree that ORIDA doesn't apply, that this is a distinct invention from what was non-elected, then this case falls under Weiler and the result is still the same. Because it doesn't make any sense. I mean, logically, it may well be what Weiler stands for, and I don't know if I agree with you or not on that. But it just doesn't make sense logically. If the PTO allows people to file through reissue a set of claims to a distinctly different invention than what they had previously claimed, and then two reissues would issue, why would the PTO say, okay, suppose in original prosecution you had two distinct inventions and we made you restrict them. You pursued this first one, not the second one. Then you realize there's a third invention, not even arguably within either of the first two. Why can't you come in with the third invention and reissue vis-à-vis the first set of claims and go after it? It's not trying to recapture what you already gave up. And that's the heart, the kernel underneath ORIDA, is not letting you recapture what you gave up. So why, if the PTO allows you in normal circumstances to file reissue claims to a distinctly different invention, can you not file reissue claims to a distinctly different invention that is completely different from what you gave up? The answer to that question, Your Honor, is what this court said in Weiler. In Weiler they said if it's not an error to fail to file a divisional application to non-elected subject matter, then it's accordingly not an error to fail to file a divisional to subject matter that you never claimed before. And so as long as there's a restriction and you've chosen one invention, all other distinct subject matter, if you want the protections of 120 and 121, you have to file a divisional application. But we don't even have to go that far if at least Weiler says that if you have something that falls within an unelected category that adds to the unelected category of claims, you can't recapture something new. That's what we think ORIDA says. But Weiler says if you have subject matter that was distinct from anything you originally claimed and were subject to restriction requirements, you can't claim that either. You can't get that through reissue either. Reissue requires error in the issued patent. And here there's no error in her patent. Her claims are exactly what she decided to prosecute and gain allowance of. You do see the clear illogic between what you're arguing now and the PTO's position if there had never been a restriction requirement, right? I mean, I just don't see. The source of all of this is to prevent people from recapturing. And so I think that Judge O'Malley's interpretation of Weiler would allow the universe to not be inconsistent because her interpretation of Weiler would be only if the claims would fall within the same group that had been given up. Because isn't that the heart of what's behind all of this? You can't reclaim and reissue what you previously gave up. That's true. Your Honor, when the Patent Office came to this court to argue in re-stat, we did say that we no longer wanted to follow Rule 1.176. That it was, that again, it didn't make any sense in light of this Rida-Weill-Doyle case law. Because I believe in stat, there was no restriction requirement, but the thing that they were trying to come back, the invention that they were trying to come back in years later to get was something that was completely different. So we've taken hold of you in the theological situation you find yourself in. Well, it's, you know... You don't have to answer. There's no safe way for you to answer that, so we'll let you go. But I believe... No, I think they created the situation and we just said you're stuck with it. I'd like to correct one thing Judge O'Malley said earlier, which was Doyle was a situation where they were, Doyle was trying to broaden non-elected subject matter, but actually Doyle broadened his patented claims. He, so that was a normal re-issue situation. He was broadening his patent claims and it just so happened that they were so broad that they swept in some non-elected subject matter. But that is a proper re-issue as the court said. And here, again, Solomon is not trying to, again, she acquiesced to the restriction requirement. She agreed to that one invention. She's not trying to broaden or narrow that one invention. If I can just briefly respond to the written description, rejection. I will just say that we believe that there are no antibodies that fall within the scope of the claim and the written description is not satisfied. Even if the court agreed with Solomon's reply brief that Amy 33 falls within the scope, it still would not be sufficient written description. The reason is because there's unpredictability in the art. The specification itself shows that only one antibody out of the two antibodies that they tried to test worked. And so I would point this court to cases like N. Ray Curtis and Noel V. Letterman that say when you have unpredictability in the art and only in here, only one species that falls within the genus, that's not sufficient written description. How many species would have been enough? Well, this court has not set forth a bright line number in Ariad, but as the examiner said, one is not enough because it doesn't tell you what other antibodies would work. And here we have antibodies that not only bind, but they're a subgenus of antibodies because they bind and they do so as well, better than or greater than Amy 33. And as the board pointed out, they have no other antibodies that work as well as Amy 33 or better than Amy 33, so they haven't described the full scope of the claim. How do you respond to the contention that even if it's true that the art generally is unpredictable, that this particular issue is not unpredictable? In other words, he argues that it's fairly routine and well-known and so that you don't have the unpredictability that would normally be required to say that one species disclosure is not enough. Well, I think the opposite is actually true. The antibody art itself is not unpredictable. I'm sorry. The antibody art is not unpredictable, but whether or not this antibody, the antibody that they want to treat diseases caused by aggregating proteins, whether or not that antibody will work is unpredictable because they have a structure. They say that an antibody that binds to a certain epitope will have this function of preventing or treating this disease. And they've shown in their specification that not every antibody that actually binds to that epitope has that function. So that's the unpredictability. Even though you have an antibody that binds to that epitope, you don't know whether it works or not. Thank you. Thank you. Let's work backwards to what's closest to our memory. I believe that the art is predictable. Certainly it's true that not every antibody that you can raise using 1 to 28 as an immunogen will inhibit aggregation of beta-amyloid to the same extent as AMY-33 or even at all. Indeed, as Juan shows us, when you're making monoclonal antibodies, most of the antibodies that you make using this as an immunogen won't bind to the immunogen at all. So you have to do a screen to find the antibodies that bind to the immunogen. All we're suggesting here is, and certainly it's predictable that there's going to be something within that screen that works, all we're suggesting here is that we're doing a second screen that once you find the ones that bind to the antigen, we do the second screen to make sure what the degree of inhibition is. And if the degree of inhibition is at least as great as AMY-33, it falls within. And it's predictable that there's antibodies that have that property. I'm not guessing, I'm not hoping and wishing in prayer for it. We know that it does because we've got AMY-33. It does. It falls within the scope of the claim of it does, and there must be other ones. I could find that same binding site again. I could find something that's better. But the fact is that I've determined that antibodies exist that have that and how to do it in a very simple, easy way that I've shown how to do the screens and the spec, therefore I think that it is predictable. Let me go back just briefly. You're absolutely correct, Brooks, that recapture is the key in the ERIDA doctrine. And recapture, you're allowed to recapture claims that are narrower than the ones you deleted. You're allowed to do that. Wadlinger says that. You're allowed to have claims that are narrower. Why all of a sudden in the divisional situation, the restriction requirement situation, you can't prosecute a claim in a reissue that's narrower than something that you intentionally gave up. I did not intentionally give up that claim. I never presented it. On the other hand, in ERIDA, where the claim… That's true. Wyler, Judge Markey's opinion in Wyler is a problem for you. Wyler is a problem for me, and I admit it. How come you do? I've got to follow it. I think it must be restricted to its facts because it's talking about the error and failure to file a divisional and that's not my error. My declaration says I intentionally didn't file a divisional, but my error was in failing to present these narrower claims originally in that case. Now, if I had presented them, then the whole course of prosecution would be different. I'm not saying that I'm going to change my prosecution of existing claims that were already there. In ERIDA, the claims had already been there. They didn't err. There was no error in not presenting the claim. They did present it. I never presented these claims. It's just like an error or claim under rehab. Thank you for your time. Thank you. Thank both parties for being here today.